

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00376-CV

| | | |
|---|---|---|
| In the Matter of T.O.R. | § | From County Court at Law No. 1 |
| | § | of Wichita County (37219-L-D) |
| | § | January 31, 2013 |
| | § | Per Curiam |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-12-00376-CV**

IN THE MATTER OF T.O.R.

----------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In one issue in this accelerated appeal, Appellant T.O.R. appeals the trial court's order authorizing psychoactive medication under health and safety code section 574.106. *See* Tex. Health & Safety Code Ann. §§ 574.070, 574.106, 574.108 (West 2010). We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

T.O.R. is currently under medical supervision in the North Texas State Hospital after having been found incompetent to stand trial for charges related to the possession of a controlled substance. On August 17, 2012, one of T.O.R.'s doctors, Zahida X. Syed, MD, filed an application for an order to administer psychoactive medication to T.O.R. In the application, Syed states that she has diagnosed T.O.R. with "Schizophrenia, Paranoid type." Syed stated that she had determined that the administration of multiple classes of psychoactive medications is the proper and customary treatment for and in the best interest of T.O.R. Syed further stated that T.O.R. verbally refuses to take the medications voluntarily and that she believes that T.O.R. lacks the capacity to make a decision regarding the administration of these medications.

According to Syed, T.O.R. "is very paranoid [and] delusional." By Syed's account, T.O.R. refuses to eat at times, believing the food has been poisoned, and he often will not fall asleep out of fear that someone will hurt him. Furthermore, T.O.R. believes that he has been chosen by God and hears the voices of God and Jesus. Syed also said that T.O.R.'s "insight and judgment are poor, refusing to take any type of treatment." Syed proposed that if T.O.R. were treated with the proper medications, T.O.R.'s prognosis would be fair, and he could regain his competency. Syed further averred that T.O.R. is dangerous, stating that he was "placed in restraint" and "received emergency medication" after starting a delusion-driven fight with hospital staff.

3

The trial court held a hearing on the application on August 27, 2012. At the hearing, the State called Dr. Emory J. Sobiesk to testify, and T.O.R.'s attorney stipulated to Sobiesk's qualifications to testify as an expert.[2] Sobiesk averred that he is T.O.R.'s attending physician. According to Sobiesk, T.O.R. suffers from paranoid schizophrenia. Sobiesk testified that T.O.R. is "quite suspicious and feels the entire staff is against him." T.O.R. has been observed closing shades or blinds in the day room, expressing fear that outsiders might see him. He also often refuses to eat, believing his food has been poisoned. By Sobiesk's account, T.O.R. will only eat if the food is "canned and can be opened in his presence." He refuses to attend competency classes and other activities that have been prescribed for him. T.O.R. also refuses to take medications.

Sobiesk testified to the possible side effects of the prescribed medications but stated that there were no medical alternatives to court-ordered medications that are likely to produce the desired result of T.O.R.'s becoming "more reasonable, [] less terrified of being in danger, [and] generally being more comfortable." Sobiesk also averred that without medications, T.O.R. "would remain incompetent [to stand trial] and quite probably deteriorate still further." Sobiesk testified that the benefits and potential side effects of the proposed medications had been explained to T.O.R. Sobiesk stated that T.O.R. lacks the

[2]Sobiesk testified that Syed's application was filed "prior to [T.O.R.'s] transfer to [Sobiesk's] care" but that the medical need expressed in the application, "persists."

4

capacity to make a decision regarding the administration of medications "on the basis of his illness," that the benefits of the medications outweigh the possible side effects, and that the proposed medications are in the patient's best interest.

On cross-examination, Sobiesk testified that there is the potential for serious side effects but that their occurrence is "extraordinarily rare." When asked what he thought of the potential of T.O.R.'s being against taking medications based on his religious faith, Sobiesk replied, "[P]art of his symptoms are auditory hallucinations[;] . . . he literally claims to hear God talking to him and other similarly extreme, rather extreme religious views." According to Sobiesk, T.O.R. also believes that the police are "in some sort of collusion or movement against him."

T.O.R. testified[3] that he did not want to take medicine because it was against his faith to do so. He also said that the side effects of the drugs were "worse than the intended results." T.O.R. further testified that it is "absolutely preposterous" that his "train of thought" could be changed by medication. He also said that the notion that medication could change "a man's train of thought . . . is an insult and a slap in the face to education and the knowledge of

---

[3]Twice during Sobiesk's testimony, T.O.R. communicated to the trial court. Once, T.O.R. simply burst out, "So to damage me and then . . . ." The trial court explained to T.O.R. that he would "get a chance." Later during Sobiesk's testimony, T.O.R. raised his hand, attempting to interject something, stating, "Can I speak?" The trial court disallowed T.O.R.'s question and told him to speak through his attorney. T.O.R. responded, "I wanted to question him." The trial court told him, "That's your attorney's job, sir." The hearing then continued.

human beings." He stated that he was not paranoid, explaining that "the reason for my so-called paranoia is that I've had threats from the cops; I've had threats that they've tried to pay off people to try to eliminate me or rub me out." He also averred that the proposed medications (and their side effects) were also a plot "to possibly [try] to eliminate" him. By T.O.R.'s account, the medications could cause deadly muscle spasms: "[I]t could make my heart spasm muscle. I mean, you know, it could stop working." On cross-examination, T.O.R. was asked whether he had heard the voices of God and Jesus. T.O.R. responded, "That's not the first time God's talking to man. He's talked to Abraham, Isaac, Jacob, Moses. I mean I can go on down the list of God talking to people. What makes me any different?" When asked whether he had started a fight with hospital staff, he responded that such an allegation was "a lie from the pit of Hell."

At the conclusion of the hearing, the trial court granted the application for court-ordered psychoactive medications. The trial court found that T.O.R. lacked the capacity to make a decision regarding the administration of medicine, that T.O.R. presents a danger to himself or others, and that the proposed treatment of psychoactive medications was in T.O.R.'s best interest. This appeal followed.

### III. DISCUSSION

In one issue, T.O.R. complains that the evidence is legally and factually insufficient to support the trial court's findings under health and safety code section 574.106. Tex. Health & Safety Code Ann. § 574.106. We disagree.

6

## A.    Standards of Review

An applicant's burden of proof under health and safety code section 574.106(a-1) is clear and convincing evidence.  Tex. Health & Safety Code Ann. § 574.106(a–1).  Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

In evaluating evidence for legal sufficiency under the clear and convincing standard, we review all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true.  *Id.*  We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so.  *Id.*  The factfinder, not this court, is the sole judge of the credibility and demeanor of the witnesses.  *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In reviewing the evidence for factual sufficiency under the clear and convincing standard, we must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that its finding was true.  *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then

7

the evidence is factually insufficient. *Id.* We must not supplant the trial court's judgment with our own. *Id.* The factfinder is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* at 109.

### B.  Health and Safety Code Section 574.106(a–1)

The trial court may issue an order authorizing psychoactive medication only if it finds that one of the two grounds in section 574.106(a–1) has been established by clear and convincing evidence after a hearing. Tex. Health & Safety Code Ann. § 574.106(a–1). Pertinent to this case, the first ground that supports such an order has two parts: (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication is in the patient's best interest. *Id.* § 574.106(a–1)(1).

#### 1.  Capacity

In part of his sole issue, T.O.R. contends that the evidence is legally and factually insufficient to support the trial court's finding that he lacked the capacity to make a decision regarding the administration of the proposed medications. "Capacity" under section 574.106(a–1)(1) means a patient's ability to understand the nature and consequences of the proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and to make a decision whether to undergo the proposed treatment. *Id.* § 574.101(1) (West 2010), § 574.106(a–1)(1); *State ex rel. E.G.*, 249 S.W.3d 728, 731 (Tex. App.—Tyler 2008, no pet.).

8

Here, the record demonstrates that T.O.R. had been ordered into inpatient mental health treatment by the district court to attain competency to stand trial for a possession charge. Furthermore, Sobiesk testified that T.O.R. suffers from paranoid schizophrenia. He also testified to T.O.R.'s symptoms. T.O.R.'s symptoms include that he hears the voice of God and that he believes that people outside of the hospital are trying to harm him. Sobiesk further stated that T.O.R. is paranoid that his food has been poisoned and that the hospital staff members are attempting to poison him. Sobiesk stated that due to his mental illness, T.O.R. lacks the capacity to make decisions regarding the administration of the proposed medications and that he refuses to take the medications or to otherwise participate in any competency classes or activities that have been prescribed to him.

Rather than contradict this testimony, T.O.R. testified that he, much like many of the Biblical patriarchs, does in fact hear the voices of God and Jesus. And rather than demonstrate an understanding of the consequences of the proposed medications, T.O.R. testified that the possible side effects of the medications were another manner in which people were attempting to "eliminate" him. He also conveyed that it was "preposterous" to believe that medicine could change his "train of thought."

Given the evidence presented at the hearing and viewing the evidence in the light most favorable to the trial court's capacity finding, while also giving deference to the trial court's determination of the witnesses' credibility and

9

demeanor, we conclude and hold that the trial court could have formed a firm belief or conclusion that T.O.R. lacked the capacity to make a decision regarding the administration of psychoactive medications to treat his paranoid schizophrenia. *See D.P. v. State*, Nos. 01–09–00097–CV, 01–10–00002–CV, 2010 WL 376007, at *8 (Tex. App.—Houston [1st Dist.] Feb. 4, 2010, no pet.) (mem. op.) (holding evidence legally sufficient to support capacity finding when physician testified that appellant lacked capacity because he was delusional and did not think he was sick). Further, because T.O.R. believes that it is "absolutely preposterous" that his "train of thought" could be changed by medication, his ability to understand the benefits of the medication are irrelevant due to the fact that he simply cannot weigh the benefits against the potential adverse effects. In short, T.O.R. incorrectly believes that the benefits of the proposed medications have no application to him. *See id.* at *8–9 (concluding that "[w]hile [patient] may be able to describe the benefits of the medication, [he] cannot weigh the benefits against the adverse effects if he incorrectly believes that the benefits have no application to him"). Therefore, we conclude that the evidence is also factually sufficient to support the trial court's capacity finding. *See H.R.M.*, 209 S.W.3d at 108. We overrule this portion of T.O.R.'s sole issue.

### 2. Best Interest Finding

In part of his sole issue, T.O.R. challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding. In making its best interest findings under either ground of section 574.106(a–1), the trial court shall

consider (1) the patient's expressed preferences regarding treatment with psychoactive medication; (2) the patient's religious beliefs; (3) the risks and benefits, from the patient's perspective, of taking psychoactive medication; (4) the consequences to the patient if the psychoactive medication is not administered; (5) the patient's prognosis if he is treated with psychoactive medication; (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. Tex. Health & Safety Code Ann. § 574.106(b).

The record reveals that T.O.R. expressly prefers not to take psychoactive medications. But that is in large part because T.O.R. believes that it is "preposterous" that medication could change his "train of thought." On the other hand, Sobiesk testified that the proposed medications would allow T.O.R. to become "more reasonable, [] less terrified of being in danger, [and] generally be[] more comfortable." He also said that the proposed medications could assist in T.O.R.'s gaining competency to stand trial.

Regarding T.O.R.'s religious beliefs, even though T.O.R. said that he did not want to take the medications because of his faith, the trial court was free to believe that T.O.R.'s admission that he actively heard the voices of God and Jesus were, as Sobiesk testified, more about his mental illness than his faith. Furthermore, as discussed above, T.O.R. does not understand the benefits of the

11

proposed medications because he believes it is impossible for the mind to be changed through medication.

Sobiesk testified about the consequences if T.O.R. does not receive medications. To that, Sobiesk stated that without medication, T.O.R. would remain incompetent to stand trial and that his mental condition could deteriorate. On the other hand, Sobiesk testified that if T.O.R. received the proposed medications, it would benefit him greatly. Regarding less intrusive alternative means, Sobiesk stated that there were no medical alternatives to court-ordered medications that are likely to produce the desired results. Moreover, Sobiesk testified that T.O.R. refuses to attend competency classes and other treatment activities. T.O.R. did not present any evidence to dispute Sobiesk's testimony about the medications' benefits and the ineffectiveness of alternative treatments.

Viewing the evidence in the light most favorable to the best interest finding, we hold that the trial court could have reasonably formed a firm belief or conviction that treatment with psychoactive medications was in T.O.R.'s best interest. *See M.H. v. State*, No. 01–09–00205–CV, 2009 WL 2050988, at *4–5 (Tex. App.—Houston [1st Dist.] July 16, 2009, no pet.) (mem. op.) (concluding that the evidence was sufficient to support the trial court's best interest finding when patient did not present any evidence to dispute physician's testimony about the benefits of treatment with psychoactive medications and lack of alternative treatments for patient's bipolar disorder with manic and psychotic features). Likewise, based on the entire record, we hold that the trial court could have

12

reasonably formed the same firm conviction or belief based on its determination of the witnesses' credibility and the weight to be given their testimonies. *See H.R.M.*, 209 S.W.3d at 108–09. We conclude that the evidence is legally and factually sufficient to support the trial court's best interest finding and therefore overrule this portion of T.O.R.'s sole issue.

## IV. Conclusion

Because we have overruled the portions of T.O.R.'s sole issue regarding the trial court's capacity and best interest findings, we need not address the remainder of his sole issue regarding the trial court's danger-to-self-and-others finding. Thus, we affirm the trial court's order.

PER CURIAM

PANEL: MEIER, GARDNER, and MCCOY, JJ.

DELIVERED: January 31, 2013

13