In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00373-CV

_____

IN THE INTEREST OF C.A.N.

On Appeal from the County Court at Law
Polk County, Texas
Trial Cause No. CIV31004

**MEMORANDUM OPINION**

Appellant J.A., the father of the minor child C.A.N., appeals the trial court's judgment terminating his parental rights. In two issues, J.A. challenges (1) the sufficiency of the evidence to prove that he knowingly engaged in criminal conduct that resulted in his conviction of an offense and inability to care for C.A.N. and (2) the sufficiency of the evidence supporting the trial court's finding that termination of J.A.'s parental rights was in the best interest of C.A.N. We affirm the trial court's order terminating J.A.'s parental rights.

1

## BACKGROUND

The trial court conducted a bench trial on the petition for termination filed by the Department of Family and Protective Services ("the Department"). J.A. testified that he is currently incarcerated. According to J.A., he did not learn that he is C.A.N.'s father until about four months before trial, and he was incarcerated when he was contacted by the Department. J.A. explained that he was initially sentenced to incarceration in 2013, and he has been incarcerated since April of 2017. A copy of a judgment, dated May 27, 2014, sentencing J.A. to seven years of confinement in TDCJ for the offense of "deadly conduct discharge firearm" was admitted into evidence. *See* Tex. Penal Code Ann. § 22.05(b) (West 2011). When asked about the facts surrounding his conviction for discharging a firearm, J.A. testified that the offense occurred when he was eighteen, and he explained that "[s]ome people were on my property, and they had a gun as well. . . . I was scared, jumpy, and I shot at them." J.A. testified that no one was injured.

J.A. testified that he received parole for two years, but he subsequently elected to return to prison rather than go to a halfway house. J.A. testified that his original sentence was for seven years, and his sentence will be completed in 2021. According to J.A., he has a home to return to upon his release.

J.A. explained that he has four other children, and he relinquished his parental rights to one of those children. J.A. testified that he does not support any of his children, and he last saw his five-year-old before his incarceration. According to J.A., he sees the other two children "once a year," but he also engages in "FaceTime, video chat, Skype, stuff like that[]" with the children. J.A. testified that he wanted C.A.N. to remain in the Department's custody until he is released from prison, which he testified will be before the remaining three years of his sentence because he'll receive parole. J.A. testified that he must appear before the parole board for a hearing, but he opined, "my chances are pretty good." J.A. explained that he believes he might receive parole because he has not gotten into any trouble, he has "a lot of support letters," he receives "support from the outside financially," and he has a place to go upon his release. J.A. testified, "I'm a good dad. I've always taken care of my kids. I've always worked. . . . I've always been financially stable. . . ." J.A. testified that due to his incarceration, he was unable to participate in most of the services recommended by the Department. According to J.A., termination of his parental rights is not in C.A.N.'s best interest.

Amanda Jackson, conservatorship supervisor for the Department in Polk and San Jacinto counties, testified that the Department is seeking termination of J.A.'s parental rights so that C.A.N. "can be available for adoption." Jackson explained that

3

C.A.N.'s mother had filed an affidavit of relinquishment, of which the trial judge took judicial notice. When asked about the best interest of C.A.N., Jackson testified,

> I think [J.A.] provided the Department's reasoning during his testimony. [C.A.N.] does not know [J.A.]. He still has time remaining on his sentence. [C.A.N.]'s life shouldn't be put on hold while we wait to see exactly when [J.A.] is going to get out. He's saying there's a good chance he'll come up for parole, but he's also been on parole before and ended up going back. And I don't think that [C.A.N.'s] life should be put on hold any longer. He's already been in foster care for a year. I think he deserves permanency. He deserves a family. He's bonded with his current foster family. That's who he sees as his mom and dad. . . . [C.A.N.] is very bonded there, very well taken care of, all his needs are met. And they're willing to provide that family now[.]

Jackson testified that C.A.N.'s foster parents want to adopt him. According to Jackson, C.A.N.'s recent one-year checkup showed that he is "on target developmentally, hitting all of his milestones." Jackson explained that she feels that a child's life is put on hold while he is in foster care, so "part of his best interest is looking at a prompt resolution date." Jackson testified that J.A. "has contacted the caseworker, but he's not able to provide a safe and stable home for this child. He's not in a position to provide those things. So meanwhile the child sits in foster care." In addition, Jackson testified that J.A. "has not been there for his other children[]" and has committed offenses for which he has been incarcerated. Jackson explained that C.A.N. had no other relatives who could care for him.

4

C.A.N.'s foster mother, A.R., testified that C.A.N. has been in her home since he was one month old, and she explained that he has started walking and talking and is doing well. According to A.R., her husband's two biological children also live in the home, and they interact with C.A.N. "just like part of the family. I mean, [there is] no difference in anything. That's their brother." A.R. explained that if J.A.'s parental rights were terminated, she is interested in adopting C.A.N. When asked about the possibility of having C.A.N. in her home long term without being able to adopt him, A.R. explained, "Our preference is to adopt him and keep him. That's what we want to do." According to A.R., she and her husband are "the only mom and dad that [C.A.N.] knows." A.R. testified that she believes remaining with her family is in C.A.N.'s best interest.

Lisa Hladek-Parker, the CASA representative assigned to C.A.N., testified that she visits C.A.N. approximately once per month. According to Hladek-Parker, C.A.N. is thriving in his foster home. Hladek-Parker opined that terminating J.A.'s parental rights and allowing C.A.N. to stay with his foster family is in C.A.N.'s best interest.

At the end of the hearing, the trial judge stated that he found, by clear and convincing evidence, that J.A. knowingly engaged in criminal conduct that resulted in his conviction for an offense that resulted in his confinement and inability to care

for C.A.N. for not less than two years from the date the Department filed its petition. In addition, the trial judge stated that he found that termination of J.A.'s parental rights is in C.A.N.'s best interest, and he terminated J.A.'s parental rights and appointed the Department managing conservator of C.A.N. J.A. then appealed.

ISSUES

In his first issue, J.A. asserts that the evidence was legally and factually insufficient to prove that he knowingly engaged in criminal conduct that resulted in his conviction of an offense and inability to care for C.A.N. for at least two years from the date the Department's petition was filed. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q) (West Supp. 2018).[1] In his second issue, J.A. challenges the legal and factual sufficiency of the evidence to support the trial judge's determination that termination of J.A.'s parental rights was in the best interest of C.A.N. *See id.* § 161.001(b)(2). We address J.A.'s issues together.

When performing a legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder

---

[1]Because the 2017 amendments to section 161.001 of the Family Code are not material to this appeal, we cite to the current version of the statute.

resolved disputed facts in favor of its ruling if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*.

When performing a factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id*. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id*. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id*.

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In the*

*Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The Department must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2018); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment terminating parental rights if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *See In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Section 161.001(1)(Q) permits termination if the trial court finds by clear and convincing evidence that (1) the parent has knowingly engaged in criminal activity that resulted in the parent's conviction of an offense; and (2) the parent's confinement or imprisonment creates an inability to care for the child for not less than two years from the date the petition was filed. Tex. Fam. Code Ann. § 161.001(1)(Q).

Subsection Q of the statute focuses on the parent's future incarceration and the parent's inability to care for the child. *In the Interest of H.R.M.*, 209 S.W.3d 105, 109-10 (Tex. 2006); *In the Interest of N.R.T.*, 338 S.W.3d 667, 675 (Tex. App.— Amarillo 2011, no pet.). Subsection Q purports to protect a child whose parent will be incarcerated for periods exceeding two years after a termination proceeding begins. *See In the Interest of A.V.*, 113 S.W.3d at 360-61. To terminate parental rights

8

under subsection Q, the Department must show that the parent is incarcerated and unable to care for the child for at least two years from the date the Department's petition was filed. *See In the Interest of H.R.M.*, 209 S.W.3d at 110. While parole decisions are inherently speculative, evidence of the availability of parole is relevant to determining whether the parent will be released within two years. *Id*. at 109.

The record shows that the Department filed its petition for termination on June 30, 2017. The evidence before the trial court also shows that J.A. was convicted of deadly conduct by discharging a firearm on May 27, 2014, and he was sentenced to seven years of confinement, making 2021 the year of his projected release. Deadly conduct by discharging a firearm, the offense for which J.A. was convicted, includes as an element the discharge of a firearm at or in the direction of one or more individuals "knowingly[.]" Tex. Penal Code Ann. § 22.05(b)(1). The trial court heard evidence from J.A. that he would become eligible for parole in 2019 and that J.A. believed he had a good chance of receiving parole due to his good record while incarcerated, support letters, and financial support from outside.

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(1)(Q), we conclude that the trial court could reasonably conclude and form a firm belief or conviction that J.A. knowingly engaged in criminal activity that resulted in his conviction of an offense, and that J.A.'s

9

incarceration rendered him unable to care for C.A.N. for not less than two years from the date the Department filed its petition. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q); *In the Interest of H.R.M.*, 209 S.W.3d at 110; *In the Interest of N.R.T.*, 338 S.W.3d at 675-76.

With respect to the child's best interest, we consider a non-exhaustive list of factors: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code Ann. § 263.307(b) (West Supp. 2018). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d at 677.

The trial court heard Jackson testify that J.A. does not know C.A.N., and C.A.N.'s life should not be put on hold during J.A.'s incarceration because although J.A. testified that he had a good chance of receiving parole, J.A. had been on parole before and had been sent back to prison. Jackson also testified that C.A.N. had already been in foster care for a year, and he deserves the opportunity to be with his current family, with whom he has bonded. According to Jackson, C.A.N. is well taken care of by his foster family, and his foster family wants to adopt him. In addition, Jackson explained that a prompt resolution date for the Department's petition is part of the best interest determination. The trial court heard Jackson testify that the Department sought termination of J.A.'s parental rights to enable C.A.N. to be adopted. The trial court also heard CASA representative Hladek-Parker testify that C.A.N. is thriving in his foster home, so terminating J.A.'s parental rights and allowing C.A.N. to stay with his foster family is in C.A.N.'s best interest. Moreover, the trial court heard C.A.N.'s foster mother A.R. testify that C.A.N. is doing well in her home, and she wants to adopt him. According to A.R., she and her husband are the only parents that C.A.N. knows.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2018). As the sole judge of the credibility of the witnesses and the weight to

be given to their testimony, the trial court could reasonably conclude and form a firm belief or conviction that termination of J.A.'s parental rights was in the best interest of C.A.N. *See id.* §§ 161.001(b)(2), 263.307; *see also In the Interest of J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We conclude that the Department established, by clear and convincing evidence, that J.A. committed the predicate act enumerated in section 161.001(b)(1)(Q) and that termination of J.A.'s parental rights is in the best interest of C.A.N. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q), (2); *In the Interest of A.V.*, 113 S.W.3d at 362. We overrule issues one and two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on December 4, 2018
Opinion Delivered January 31, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.