**Mable Jo David HOLICK, Petitioner,**

v.

**Danny Eugene SMITH Et ux.,**
**Respondents.**

**Nos. C–3261, C–3262\*.**

Supreme Court of Texas.

Feb. 6, 1985.

Rehearing Denied March 13, 1985.

\* These are direct companion cases.

Thomas T. Tatum, Whitehouse, for petitioner.

Bain, Files, Allen & Caldwell, Jerry Bain, Tyler, for respondents.

SPEARS, Justice.

This case involves the involuntary termination of the parent-child relationship between Mable Jo Holick and two of her children. Mr. and Mrs. Danny Eugene Smith brought suit for termination and for adoption of the two Holick children. After a non-jury trial, the court ordered termination of the parent-child relationship and granted the adoption. The court of appeals, in an unpublished opinion, affirmed. We reverse the judgments of the courts below.

In early March 1982, Ms. Holick left the children with the Smith family. Ms. Holick had been unable to financially support herself or the children. Although she was able to keep them clothed and fed, they sometimes had no place to sleep but the car. The children were behind on their immunizations and had head lice when Ms. Holick's niece, Mrs. Smith, offered to take care of them until Mrs. Holick could get on her feet.

After leaving the children with the Smiths, Ms. Holick went to Dallas with her youngest child to live with her boyfriend. There, she obtained employment as a waitress. She sent no money to the Smiths, nor did they expect her to send money for the children's support. She did not visit or write the children for over six months, although she did call and talk to them once during that period.

The Smiths have two children of their own, are very active in the church, and are able to financially support the children. The social worker's report concludes that the Smiths are excellent role models, express love for the children, and appear to want to adopt them.

The issue presented on appeal is whether the Texas Family Code authorizes termination under these circumstances. We are

called upon to construe section 15.02 of the Family Code, which provides in part:

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; or

(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months; or

(C) voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months; or

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

(F) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition;

\*    \*    \*

and in addition, the court further finds that termination is in the best interest of the child.

Tex.Fam.Code Ann. § 15.02 (Vernon Supp. 1984).

The trial court terminated the parent-child relationship based on subsection (1)(C). There are five requirements for termination under subsection (1)(C):

(1) voluntarily left the child,

(2) alone or in the possession of another,

(3) without providing adequate support of the child,

(4) remained away for at least six months, and

(5) termination is in the best interest of the child.

It is undisputed that Ms. Holick voluntarily placed the children in the possession of the Smiths and that she remained away for at least six months, even though she had expressed an intent to return for the children. It is undisputed that Ms. Holick made no support payments but was not expected to by the Smiths, and she did not contest the trial court's finding that the termination and adoption would be in the best interest of the children. She contends, however, that she was not required to actually support the children, but only make arrangements for their adequate support.

The natural right existing between parents and their children is of constitutional dimensions. *In re G.M.,* 596 S.W.2d 846, 846 (Tex.1980); *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). Indeed, "involuntary termination of parental rights involves fundamental constitutional rights." *In re G.M.,* 596 S.W.2d at 846. This natural parental right has been characterized as "essential," "a basic civil right of man," and "far more precious than property rights." *See Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1976). A termination decree is complete, final, irrevocable and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit. *Wiley,* 543 S.W.2d at 352; Tex.Fam.Code Ann. § 15.07 (Vernon 1975). Moreover, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights. *Santosky v. Kramer,* 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1980); *Richardson v. Green,* 677 S.W.2d 497, 500 (Tex.1984). Consequently, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent. *See Cawley*

*v. Allums,* 518 S.W.2d 790, 792 (Tex.1975); *Heard v. Bauman,* 443 S.W.2d 715, 719 (Tex.1969).

The Smiths seek a construction of subsection (1)(C) that would require Ms. Holick to have personally sent them "adequate support" for the children; however, they never expected such support. The Smiths took the children because Ms. Holick could not adequately support them. The Smiths, nevertheless, argue that the legislature intended to require parents to personally "provide adequate support" under (1)(C) because (1)(B) contains the language "provide *for the* adequate support." In *Brokenleg · v. Butts,* 559 S.W.2d 853 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.) *cert. denied* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979) the court construed subsection (1)(B), the three-month provision. The court held that subsection (1)(B) requires the parent to make arrangements for the adequate support of the child rather than personally send support.

We believe that subsection (1)(C) is capable of two interpretations. "Provide" is defined to mean "to furnish; supply" or "to fit out with means to an end." Webster's New International Dictionary (2nd ed. 1960). Thus, subsection (1)(C) is susceptible to an interpretation which would merely require that the parent make arrangements for adequate support rather than personally support the child.

The Smiths would have us adopt an interpretation which would allow the termination based on whether the parent is acutely indigent, not whether the parent intended to abandon the child nor whether the parent's conduct endangers the physical or emotional wellbeing of the child. Under such an interpretation a parent's rights could be terminated if he placed his child with another who promised to provide support, even though he expressed an intent to return as soon as he could get back on his feet. His rights could be terminated even if he sent every dime he could spare for that child's support, if what he sent were not enough to be termed "adequate." With the view that termination is such a drastic and grave measure that involuntary termination statutes are strictly construed in favor of the parent, we decline to adopt such an interpretation.

We hold that under § 15.02(1)(C) Ms. Holick was required to make arrangements for the adequate support rather than personally support the children. Termination was not authorized under these facts. Accordingly, we reverse the judgments of the courts below and render judgment that the termination is denied and the adoption is set aside.

Dissenting opinion by WALLACE, J., in which McGEE and KILGARLIN, JJ., join.

WALLACE, Justice, dissenting.

I respectfully dissent. The majority opinion clearly misconstrues both the obvious intent and the plain meaning of Tex. Fam.Code Ann. § 15.02 (Vernon Supp. 1984). It is a rule of statutory construction that every word of a statute is presumed to have a specific purpose. Likewise, every word excluded from a statute must be presumed to have been excluded for a particular reason. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981).

We must presume the Legislature intended that termination of the parent-child relationship may be granted when: (1) the parent leaves the child with one not a parent ... without expressing an intent to return without providing for the adequate support of the child and remains away three months; or, (2) the parent leaves the child with a parent, or another ... without providing adequate support of the child and remains away for at least six months. Tex. Fam.Code Ann. § 15.02(1)(B) and § 15.-02(1)(C). The crucial words expressly adopted in the first instance are, "without expressing an intention to return" and "without providing for" the adequate support of the child; whereas, in the latter situation the language is "without providing adequate support."

In comparing § 15.02(1)(A), (B) and (C), it will be noted that there is no time delay before suit is required if a parent leaves and expresses an intent not to return. Three months absence is required before termination where the child is left with someone other than a parent and no provision for support is made. The time period expands to six months even if the child is left with the other parent and no support is provided. The Tex.Fam.Code coordinates a progression of conduct with lengthened delays. The omission of "for" from § 15.-02(1)(C) was logically intended.

These provisions do not authorize termination only in the case of the acutely indigent. Termination of the parent-child relationship is authorized in any situation where the parents meet the legislative requirements for termination through poverty, neglect, abuse or any other condition falling within these sections.

Denying termination in this instance ignores those situations where the best interest of the child is served by termination of the parent-child relationship. In this case, the trial court found that the best interest of the child would be served by the stable, loving environment of the Smiths. This finding was not contested by Ms. Holick. While it is true that the parent-child bond is very strong, it is not true that all parents provide for the best interest of their children.

A common thread running through the Tex.Fam.Code is protection of the "best interest of the child." The express language of the provisions regarding termination of the parent-child relationship should be followed when the trial court finds that to do so would be in the best interest of the child.

Accordingly, I would affirm the judgments of the courts below and render judgment that the termination and adoption be granted.

McGEE and KILGARLIN, JJ., join in this dissenting opinion.