**In the Interest of H.R.M.**

**No. 06–0270.**

Supreme Court of Texas.

Dec. 1, 2006.

Floyd H. Christian Jr., Kelly McClendon, Angleton, for James and Stacey W.

Jay Anderson Mallard, Shannon Tigner, Angleton, for William M.

PER CURIAM.

Section 161.001(1)(Q) of the Texas Family Code provides that parental rights may be terminated if the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." A divided court of appeals determined that the time remaining on a parent's prison sentence was insufficient evidence from which a factfinder could reasonably form "a *firm* belief or conviction" that a parent would be imprisoned or confined for at least two years. Because the court of appeals misapplied

the standard for reviewing the evidence, we reverse and remand.

William Keith M. ("Keith") and Stacey W. are the biological parents of H.R.M., who was born October 13, 2000. Keith and Stacey married in December 2000, then divorced in 2001. Under an agreed divorce decree, Stacey was H.R.M.'s sole managing conservator, and Keith was possessory conservator with the right to supervised visitation. Since January 2002, Keith has been incarcerated in the Texas Department of Criminal Justice, serving concurrent sentences for robbery and enticing a child. *See* TEX. PEN. CODE §§ 29.02, 25.04.[1]

In 2004, Stacey married James W., and on July 6, 2004, they filed a petition seeking to terminate Keith's parental rights under subsection (Q) and to allow James to adopt H.R.M.

A jury found that Keith's parental rights should be terminated, and the trial court entered an order doing so, but the court reserved a ruling on James's request to adopt H.R.M.[2] The trial court denied Keith's motion for a new trial. The court of appeals reversed the order terminating Keith's parental rights, concluding that the evidence was factually insufficient to support "a *firm* belief or conviction [that] Keith would still be imprisoned or confined as of July 6, 2006." —— S.W.3d ——, 2006 WL 1147806.

 In reviewing termination findings for factual sufficiency, a court of appeals must give due deference to a jury's factfindings, *In re C.H.*, 89 S.W.3d 17, 27

(Tex.2002), and should not supplant the jury's judgment with its own, *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003). The court should inquire "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations." *In re C.H.*, 89 S.W.3d at 25. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002). In applying this standard, "[a]n appellate court's review must not be so rigorous that the only factfindings that could withstand review are those established beyond a reasonable doubt." *In re C.H.*, 89 S.W.3d at 26 (citing *Santosky v. Kramer*, 455 U.S. 745, 767–69, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

 In *In re A.V.*, we decided that section 161.001(1)(Q) of the Texas Family Code applies prospectively and said, "Thus, if the parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the State may use subsection Q to ensure that the child will not be neglected." 113 S.W.3d 355, 360 (Tex. 2003). We recognize that a two-year sentence does not automatically meet subsection Q's two-year imprisonment requirement. In some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. A parent

---

1. A person commits the offense of enticement of a child "if, with the intent to interfere with the lawful custody of a child younger than 18 years, he knowingly entices, persuades, or takes the child from the custody of the parent or guardian or person standing in the stead of the parent or guardian of such child." TEX. PEN. CODE § 25.04(a).

2. Orders terminating the parent-child relationship are final orders appealable under section 109.002(b) of the Texas Family Code. *See* TEX. FAM. CODE §§ 109.002(b), 263.401(d)(4).

sentenced to more than two years might well be paroled within two years. Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years. Mere introduction of parole-related evidence, however, does not prevent a factfinder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. Parole decisions are inherently speculative, *Ex Parte Moussazadeh*, 64 S.W.3d 404, 413 (Tex. Crim.App.2001) (citing *Ex Parte Evans*, 690 S.W.2d 274, 278 (Tex.Crim.App.1985)), and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely within the parole board's discretion. *See In re K.R.M.*, 147 S.W.3d 628, 630 (Tex.App.-San Antonio 2004, no pet.) (stating that a father's "hope that he might be granted early release is pure speculation"). If the mere possibility of parole prevents a jury from ever forming a firm belief or conviction that a parent will remain incarcerated for at least two years, then termination under subsection Q will occur only when the parent has no possibility of parole. By that rationale, the party seeking termination would have to show that there is zero chance of early release. This would impermissibly elevate the burden of proof from clear and convincing to beyond a reasonable doubt.

 Although the court of appeals properly stated the standard for reviewing factual sufficiency in parental termination cases, —— S.W.3d at ——, 2006 WL 1147806 at *2–3, it misapplied it. The court of appeals concluded that the jury could not have reasonably formed a firm belief that Keith would remain imprisoned or confined on July 6, 2006, because Keith

testified that he would be up for parole each year and that he was participating in a pre-release program available to inmates within two years of parole. As "the sole arbiter when assessing the credibility and demeanor of witnesses," *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex.2005), the jury was free to disregard Keith's testimony, which was barely more than conjecture. Indeed, as Keith conceded, whether he would be released within two years was "up to the parole board." The record showed that Keith had multiple convictions and sentences. He had been on parole for a robbery conviction, but his parole was revoked in 2002, when he was convicted of enticing a child.[3] He received a seven-year sentence for that offense, and he had just under thirteen years left to serve of his robbery sentence. Moreover, Keith acknowledged that the parole board had twice denied him parole already.

By basing its decision on Keith's testimony that he had a possibility of parole, the court of appeals focused on one factor pertinent to deciding whether Keith would remain imprisoned. Rather than weighing all of the evidence, *see In re J.F.C.*, 96 S.W.3d at 266, the court of appeals balanced Keith's testimony against evidence of two of Keith's convictions and the time remaining on one of his sentences. —— S.W.3d at ——, 2006 WL 1147806 at *3–4. In so doing, the court did not fully account for evidence that supported the jury's verdict, nor did it give due deference to the jury's factfindings; instead, it merely substituted its judgment for that of the jury.

Keith argues that we should affirm the court of appeals' decision on the alternate ground that the evidence is factually insufficient to support the finding that Keith would be unable to care for H.R.M. for at

---

**3.** Enticing a child is normally a Class B misdemeanor, unless the offender "intended to commit a felony against the child, in which event an offense under this section is a felony of the third degree." TEX. PEN. CODE § 25.04(b).

least two years from the date the petition was filed. Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined *and* unable to care for the child for at least two years from the date the termination petition is filed. TEX. FAM. CODE § 161.001(1)(Q)(ii). Keith did not provide for H.R.M. financially following his divorce from Stacey. Keith argues that he tried to provide financial support by writing to the Attorney General, but he was informed that there was no listing of him owing any child support for H.R.M., so he provided no money for her. He contends, however, that he was involved in H.R.M.'s upbringing for the first year of her life and that he attempted to provide emotional support by sending letters. He argues that there is too little evidence on this issue to support a finding that he would be unable to care for H.R.M. for two years. In the alternative, he contends that he provided care for H.R.M. by leaving her with Stacey.

Subsection Q looks at whether the incarcerated parent will be unable to care for the child for two years from the date when the termination petition is filed. *In re A.V.*, 113 S.W.3d at 360. The evidence showed that Keith had sent H.R.M. a few letters and a Bible cover. Keith also testified that if he had to, he could go to his mother for help and support. But neither his mother nor anyone else testified that they were willing to care for H.R.M. on Keith's behalf during his incarceration. *See In re Caballero*, 53 S.W.3d 391, 396 (Tex.App.-Amarillo 2001, pet. denied) (stating that the incarcerated parent's testimony that family members could care for the child did not render the evidence factually insufficient to support a finding of inability to care). Because we do not have jurisdiction to conduct a factual sufficiency review, *see* TEX. CONST. art. V, § 6, we remand.

Keith's alternate argument, however, presents a question of law. Keith argues that he provided care by leaving H.R.M. with Stacey. On this record, the argument is meritless. Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care. If it did, then termination under subsection Q could not occur in any instance where one parent is not incarcerated and is willing and able to care for the child. Stacey is H.R.M.'s sole managing conservator, and as such, she has both the obligations of a parent and specific statutory rights. It does not follow that the possessory conservator's obligations are satisfied by allowing the sole managing conservator to be the exclusive caregiver. Keith cites *In re Caballero* for the proposition that subsection Q may not apply if he shows that another is willing to assume his duties and act on his behalf. 53 S.W.3d at 395–96. He alleges that Stacey's actions—continuing to care for H.R.M. and maintaining contact with Keith while he was in jail—constituted an implied agreement to care for the child while Keith was incarcerated. Showing that Stacey cared for H.R.M. and maintained contact with Keith, however, does not show that she agreed to care for H.R.M. *on his behalf*, particularly where, as here, she is seeking to terminate his rights. Cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child. *See, e.g., In re E.S.S.*, 131 S.W.3d 632, 640 (Tex.App.-Fort Worth 2004, no pet.) (noting that the parents had named the incarcerated parent's mother and brother as possessory conservators

with visitation rights). Such evidence appears nowhere in this record.

 Keith also asserts that he was deprived of effective assistance of counsel. Assuming Keith has a right to effective assistance of counsel, he has not shown that his counsel was ineffective. Under the well-established *Strickland* test, proving ineffective assistance of counsel requires a showing that (1) counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re M.S.*, 115 S.W.3d 534, 545 (Tex.2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In adopting the *Strickland* test for parental termination cases, we explained that, taking into account all of the circumstances surrounding the case, we "must primarily focus on whether counsel performed in a reasonably effective manner.... In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* (internal quotes omitted). Challenged conduct constitutes ineffective assistance only when it is "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001).

 Keith asserts that counsel was ineffective for seven reasons.[4] Taking into account the circumstances surrounding the case, none of these assertions, individually or combined, overcomes the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Keith has not shown that counsel's alleged deficiencies prejudiced the case, deprived him of a fair trial, or produced an unreliable result.

In sum, we hold that the court of appeals misapplied the pertinent evidentiary standard and erred in disregarding evidence that supported the jury's finding that Keith would be incarcerated for at least two years. We further hold that Keith did not provide care for H.R.M. by leaving her with Stacey. Finally, we hold that the record does not support Keith's ineffective assistance of counsel claim. Accordingly, we reverse the judgment of the court of appeals and remand to that court to consider Keith's factual sufficiency points under the proper standard of review.

4. Keith asserts that (1) there were too few voir dire questions and voir dire was too short; (2) one juror should have been struck or further questioned because his response of "uh-huh" when questioned as to whether he could follow the law could have meant "no"; (3) counsel's statement during opening argument—"I'm not really sure I understand what the law says either; but if he's right, what he said, they've got a heavy burden ..."—is an admission that the lawyer did not know the law; (4) no one explained to the jury that termination could only be granted if it was shown by clear and convincing evidence that termination was in the best interests of the child, although it was included in the jury charge; (5) counsel did not further question a juror who stated that he did not think he could terminate parental rights; (6) counsel did not object when opposing counsel discussed subsection Q during voir dire; and (7) counsel failed to preserve error by not moving for a mistrial after the judge instructed the jury to disregard opposing counsel's comment in closing that Keith had been convicted of sexually abusing a female.