**Opinion issued March 14, 2019**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-00844-CV**

———————————

## IN THE INTEREST OF J.G.S., A Child

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-52707**

---

## DISSENTING OPINION

I respectfully dissent. I would hold that Rita Sims failed to establish a statutorily-required predicate act to support termination of Paul Cooper's parental rights to J.G.S., the child who is the subject of this petition, under any of the subsections of Family Code section 161.001(b)(1) pled, namely subsections (B), (C), (F), or (Q). I join the majority's opinion and judgment holding that Sims failed to

establish her right to termination of Cooper's parental rights by clear and convincing evidence under subsections (B), (C), and (F). However, I would also hold that Sims failed to establish a predicate act under subsection (Q) by clear and convincing evidence. Because I would hold that Sims failed to establish any predicate act for termination of Cooper's parental rights to J.G.S. under section 161.001(b)(1), as required by law, I would deny the petition for termination, I would void Sims' adoption of the child, J.G.S., and I would order the reinstatement of the court order granting sole managing conservatorship of J.G.S. to Sims and possessory conservatorship to Cooper.

## Termination Under Family Code Section 161.001(b)(1)(Q)

The Texas Family Code requires that "the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (quoting *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982)); *see* TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Consequently, termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 21.

"Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. In

2

conducting a legal sufficiency review of the evidence when the standard of proof at trial is clear and convincing evidence, the court looks at all of the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we must disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* When conducting a factual sufficiency review, "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Section 161.001(b)(1)(Q) provides for termination of the rights of a parent for "knowingly engag[ing] in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the [termination] petition." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(Q); *In re H.R.M.*, 209 S.W.3d 105, 107 (Tex. 2006) (per curiam).

The majority acknowledges that there are three steps to prove a right to termination under subsection (Q), but it misapplies those steps.

According to the majority, "During the first step, the party moving for termination must produce evidence of criminal conduct by the parent that results in confinement for two years or more. The burden of production then shifts to the [incarcerated] parent." Slip Op. at 27 (citing *In re E.A.R.*, No. 13-08-00101-CV, 2009 WL 2625314, at *4 (Tex. App.—Corpus Christi Aug. 27, 2009, pet. filed) (mem. op.)).

Subsection (Q) actually says that it applies when a parent has "*knowingly engaged in criminal conduct* that has resulted in the parent's (i) conviction of an offense" and "confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the [termination] petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q) (emphasis added); *see In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.) ("First, the party seeking termination must establish that the parent's knowing criminal conduct resulted in incarceration for more than two years.").

Here, the evidence is plainly insufficient to establish under the clear and convincing standard that Cooper "knowingly engaged in criminal conduct" that resulted in his conviction of an offense. Rather, the evidence shows that his conviction for sexual assault by the military court was overturned on due process grounds; that ruling was then reversed by a panel of the military court of appeals

4

over a strong dissent;[1] and the case is still in the process of litigation. Thus, there is no final conviction. Under the majority's standard, a parent's rights to a child can be terminated even if he is *wrongfully* convicted of a crime and there is no evidence in the record regarding the grounds for his continued confinement; his simply being confined during the appeals process is enough, even if he is ultimately acquitted. That alone is reason to hold that Sims did not present sufficient evidence to support termination of Cooper's rights under step one of the proof of subsection (Q). But that is not all.

The majority further states, "In the second step, the parent must produce some evidence of how the parent will provide care for the child during the period of confinement or that the parent has arranged with another person for that person to provide care for the child during the period of confinement." Slip Op. at 27 (internal footnote omitted) (citing *In re E.A.R.*, 2009 WL 2625314, at *4 and *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied)). The majority claims, "If the parent seeks to meet the burden of production with evidence that another person will care for the child during the period of confinement, *the parent must prove the proposed caregiver's agreement to provide the care*." *Id.* (emphasis added) (citing *In re E.S.S.*, 131 S.W.3d at 640).

---

[1]     *United States v. Cooper*, — M.J. —, No. 18-0282, 2019 WL 629509 (C.A.A.F. Feb. 12, 2019).

However, the majority's restatement of the requirements to satisfy the second step of the proof required for termination under subsection (Q) overstates and misstates the parent's burden as set out in the authorities it cites.

*In re E.A.R.*, cited by the majority, actually says,

> Once TDFPS established, through [the father's] own testimony, that his knowing criminal conduct resulted in his incarceration for more than two years, the burden of production shifted to [him] to provide some evidence as to *how he intended to care for or arrange for care [of the child] during his incarceration.* [He] failed to produce any such evidence.

2009 WL 2625314, at *4 (emphasis added) (terminating parental rights of incarcerated father when father failed to produce any "evidence as to how he intended to care for or arrange for" child's care during his incarceration). There was no requirement that the parent present evidence of an agreement *by the proposed caregiver with that parent on his behalf* as the majority requires.

Similarly, in *In re Caballero*, also cited by the majority, the Amarillo Court of Appeals rejected the incarcerated father's argument that DFPS had the burden to show that there was no one with whom his child could be placed during the period of his incarceration. *See* 53 S.W.3d at 396. In a case of first impression construing the term "care" in subsection (Q), the court of appeals held that "once the Department has established a parent's knowing criminal conduct resulting in their incarceration for more than two years, the parent must produce some evidence as to how they would *provide or arrange to provide care* for the child during that period"

6

and that when the parent has met that burden of production, "the Department would have the burden of persuasion that the arrangement would not satisfy the parent's duty to the child." *Id.* (emphasis added).

Likewise, *In re E.S.S.*, which the majority also cites, says, "Second, the parent must produce some evidence as to how he would *provide or arrange to provide care* for the child during [the period of incarceration]." 131 S.W.3d at 639 (emphasis added). In that case, the Fort Worth Court of Appeals held that the incarcerated father "*met his burden* of production regarding how he would arrange for the care of [the child] in that the [pre-trial] agreement reached by the parties included naming [the father's] mother and brother possessory conservators with visitation rights." *Id.* at 640 (emphasis added). The court stated, "Appellee [the mother] consequently had the burden of persuasion to establish that this arrangement would *not* meet [the father's] duty to [the child]." *Id.* (emphasis added). The court then held that the mother, who had had custody over the child since her divorce from the father—as Sims has had custody over J.G.S. here—had presented no evidence that the pre-trial agreement would not satisfy the incarcerated father's burden of showing how he would arrange for the care of the child. Thus, her petition to terminate the father's rights failed. *Id.*

The *In re E.S.S.* court opined:

Although [the father] admitted that he is currently serving a prison term that will exceed two years, *there is no evidence that [the father] is*

7

*unable to care for [the child]. Proof that [the father] is unable to care for [the child] is an additional requirement not met by showing incarceration alone.* Otherwise, the termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime.

*Id.* at 639 (emphasis added).

*In re E.S.S.* is virtually identical to this case in that Cooper, the incarcerated father here, did show how J.G.S. would be cared for during his incarceration—namely by his mother, Sims—and Sims, who sought to terminate Cooper's rights, did not carry her burden of persuasion that he had not provided for J.G.S.'s care while he was incarcerated and would be unable to care for J.G.S. if she were not adopted by Sims.

Here, Cooper's burden at the second stage was only to produce some evidence as to how he would arrange to provide care for J.G.S. during his incarceration. He did. He produced evidence that J.G.S. was being well cared for subject to a prior court order in which Sims was named managing conservator of J.G.S. and Cooper was awarded possessory rights. Sims' own evidence in support of her termination petition admits as much. And Sims expressed her continued intention to provide for J.G.S. by adopting her.

Here, as in *In re E.S.S.*, there is literally no indication that Cooper failed to satisfy his burden of producing some evidence that he—through a prior court order—had arranged to provide for J.G.S. during the period of his incarceration. He

necessarily was unable to fulfill his possessory rights to J.G.S., accorded to him in the same court order, during the period of his incarceration, but that had no bearing on the uncontested evidence that J.G.S. has been and continues to be well cared for during the period of his incarceration. Nor is there any evidence that J.G.S. will cease to be well cared for by Sims throughout Cooper's period of incarceration or that Cooper will be unable to fulfill his parental responsibilities upon his release, which the evidence shows could be this year. Rather, the record shows that, if his conviction is overturned and he is released, Cooper may be entitled to funds he could use to support J.G.S., which remains a real, if remote, possibility. Because there is no evidence to support the second step of the proof required for termination under subsection (Q), Sims' petition for termination fails on this ground too.

The majority reasons, however, that because the child was placed in Sims' care pursuant to a prior court order and the child is well cared for, Sims should be allowed to renege on the terms of the court order appointing her sole managing conservator and appointing Cooper possessory conservator and to terminate Cooper's rights to the child—guaranteed by the same court order—and to adopt the child because she is not acting "on his behalf" in caring for the child, she is exercising her own rights to the child, which gives her grounds to terminate his rights.

This reasoning is directly contrary to the reasoning and holding of the Texas Supreme Court in *Holick*, a subsection (C) abandonment case, in which the niece with whom a mother left her children as caretaker in her absence attempted to terminate the mother's rights to the children. The court held that the parent was *not* required to produce evidence of an agreement *by the parent* and the caretaker that the caretaker would care for the children on the parent's behalf—as the majority holds here. *See Holick*, 685 S.W.2d at 21 (holding, in termination case involving question of whether mother voluntarily abandoned her children, that "provide" under section 161.001(b) includes "make arrangements for adequate support" of child and does not require personal support of child).

The supreme court pointed out in *Holick* both that "the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights" and that "termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Id.* at 20. It held that the mother's rights to her children could not be terminated for abandonment and the children adopted by the niece with whom she had left them during financial difficulties for over six months—even though the mother had obtained employment, did not send money to support the children, did not write or visit the children, and only called and talked to them once, and the niece and her husband provided for all the children's needs—because the mother had voluntarily

10

arranged for the niece to provide adequate support for the children and the children were in fact provided for. *Id.* at 19–21. That is parallel to the case here.

Ultimately, the majority rests its construction of the parent's burden of production of evidence to satisfy the second step of the proof required for termination under subsection (Q) on its construction of *In re H.R.M.*, a 2006 Texas Supreme Court per curiam opinion—i.e., an opinion that did not purport to change the law. In that per curiam case, the Texas Supreme Court stated,

> Absent evidence that the non-incarcerated parent agreed to care for the child on behalf of the incarcerated parent, *merely leaving a child with a non-incarcerated parent does not constitute the ability to provide care*. If it did, then termination under subsection Q could not occur in any instance where one parent is not incarcerated and is wiling and able to care for the child.

*In re H.R.M.*, 209 S.W.3d at 110 (emphasis added). The majority opines with respect to *In re H.R.M.*,

> The Texas Supreme Court has held that a parent relying on another's provision of care to avoid termination under Subsection (Q) must demonstrate that the *care is being provided on behalf of the parent, not out of an existing duty or inclination to care for the child. In re H.R.M.*, 209 S.W.3d 105 (Tex. 2006). . . .
>
> An incarcerated parent cannot meet his burden merely by producing evidence that there is an unincarcerated parent or grandparent who is willing and able to care for the child; instead, *the parent must present evidence that the alternative caregiver is providing care on behalf of the parent.* [*Id.*]

Slip Op. at 27–28 (emphasis added) (additional citations omitted). This construction of *In re H.R.M.* misreads and overstates the burden of proof required by the Texas

11

Supreme Court for a parent to sustain his burden at the second step of subsection (Q).

In *In re H.R.M.*, the child's mother, who had been named sole managing conservator of the child, sought to terminate the father's possessory rights. However, there the resemblance to this case ends. Although the father in *In re H.R.M.* "testified that if he had to, he could go to his mother for help and support, . . . neither his mother nor anyone else testified that they were willing to care for [the child] on [the father's] behalf during his incarceration." *Id.* Moreover, the record showed that the father "had multiple convictions and sentences. He had been on parole for a robbery conviction, but his parole was revoked in 2002 [four years before the date the case was decided], when he was convicted of enticing a child"; he "received a seven-year sentence for that offense"; he "had just under thirteen years left to serve of his robbery sentence"; and he "acknowledged that the parole board had twice denied him parole already." *Id.* at 109. In short, a jury could have reasonably formed a firm belief or conviction that the mother was the child's sole provider, that the father had not been in a position to exercise his possessory rights during H.R.M.'s childhood, that he was unlikely to be in a position to care for the child in the future, and that the father had made no arrangements to provide any care or support for the child and had no plans to care for the child should he be paroled or released.

*In re H.R.M.* is not only distinguishable on its facts but, as a per curiam opinion, it was not intended to and did not change the law with respect to the second stage of the burden of proof under subsection (Q). Thus, I cannot conclude that *In re H.R.M.* supports the majority's interpretation of that case.

Finally, I would also hold that Sims did not satisfy her burden with respect to the third stage of the proof required to terminate an incarcerated parent's rights under subsection (Q). As recited by the majority,

> If the parent's burden of production is met, the third step shifts the burden to the party seeking to terminate parental rights. *In re S.R.*, No. 13-15-00114-CV, 2015 WL 3657747, at *2 (Tex. App.—Amarillo June 11, 2015, no pet.). That party then has the *burden of persuasion to show by clear and convincing evidence that the parent's provision or arrangement would not adequately satisfy the parent's duty to the child.* *Id.*; *In re D.J.H.*, 381 S.W.3d at 611 n.3.

Slip Op. at 29 (emphasis added).

As stated above, Sims herself showed by clear and convincing evidence that J.G.S. was being well cared for pursuant to the court order appointing her J.G.S.'s managing conservator and that she intends to continue to fulfill all parental duties for J.G.S. during the period of Cooper's incarceration. Moreover, Sims failed to show by clear and convincing evidence either that that arrangement would fail or that Cooper would be unable to uphold his parental responsibilities in the future if his parental rights were not terminated. Rather, Cooper produced some evidence that his period of incarceration was likely to end within the year, either because his

previous sentence was ending or because the case against him was still not finally resolved and could result in reversal of his conviction. Sims produced no evidence to carry her burden of persuasion that Cooper would be unable to work or provide a home for J.G.S. upon his release or would otherwise be unable to fulfill his rights and obligations to J.G.S. *See In re E.S.S.*, 131 S.W.3d at 640 (holding that mother's petition seeking termination of incarcerated father's parental rights failed because she did not meet burden of persuasion to establish that pre-trial arrangement naming father's mother and brother as possessory conservators of child would not meet father's duty to child).

I join the majority's opinion and judgment that Sims failed to show by clear and convincing evidence that she was entitled to termination of Cooper's parental rights under Family Code subsections 161.001(b)(1) (B), (C), and (F) and that she failed to present clear and convincing evidence that termination of Cooper's parental rights would be in J.G.S.'s best interest. However, I disagree with the majority's opinion and judgment that Sims showed her right to termination of Cooper's parental rights to J.G.S. under subsection (Q). I would hold that the evidence is legally and factually insufficient to support termination of Cooper's parental rights to J.G.S. under subsection (Q), just as the evidence is insufficient under each of the other sections of 161.001(b) pled. Nor has Sims shown that termination is in J.G.S.'s best interest.

Accordingly, because I would hold that Sims failed to establish by clear and convincing evidence any of the predicate acts required for termination of Cooper's parental rights, I respectfully dissent from the majority's opinion holding that Sims satisfied her burden of proving her right to termination under subsection (Q) and remanding this case to the trial court for additional evidence on whether termination was in J.G.S.'s best interest.

## CONCLUSION

I would deny the petition to terminate Cooper's parental rights to J.G.S., and I would void Sims' adoption of J.G.S. I would remand the case to the trial court with instructions to reinstate the court order awarding sole possessory conservatorship of J.G.S. to Sims and possessory conservatorship to Cooper.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Justice Keyes, dissenting.

Justice Landau, concurring.