Opinion issued March 14, 2019



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-18-00844-CV
_____

## IN THE INTEREST OF J. G. S., A CHILD

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-52707**

---

## CONCURRING OPINION

I write separately to highlight an unforeseen consequence of *In re H.R.M.*, 209 S.W.3d 105 (Tex. 2006), that may bear reexamining by the Texas Supreme Court.

### Parental Rights

"The natural right existing between parents and their children is of constitutional dimensions." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The

"involuntary termination of parental rights involves fundamental constitutional rights." *In re G.M.*, 596 S.W.2d 846, 846 (Tex. 1980). Natural parental rights have been characterized as "essential," "basic civil rights of man," and "far more precious than . . . property rights." *Stanley v. Illinois*, 405 U.S. 645, 651 (1976).

"A termination decree is complete, final, irrevocable and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit." *Holick*, 685 S.W.2d at 20. Consequently, termination proceedings must be strictly scrutinized. *Holick*, 685 S.W.2d at 20. And involuntary termination statutes are strictly construed in favor of the parent. *Id.*

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753 (1980). "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." *Id.*

The Texas Supreme Court "has long recognized that the 'natural right existing between parents and their children is of constitutional dimensions.'" *In re J.F.C.*, 96 S.W.3d 256, 304 (Tex. 2002) (quoting *Holick*, 685 S.W.2d at 20, and citing *In re G.M.*, 596 S.W.2d at 846). Thus, a "parent's interest in the accuracy and justice of

2

the decision to terminate his or her parental status is. . . a commanding one." *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 27 (1981).

The severity of the remedy of parental-rights termination is so drastic, it requires clear and convincing evidence of both the predicate finding underlying the termination and the best-interest finding. TEX. FAM. CODE §§ 161.001, .206(a); *see Santosky*, 455 U.S. at 747; *J.F.C.*, 96 S.W.3d at 263–64; *In re C.R.*, No. 2-06-099-CV, 2008 WL 1699792, at *2 (Tex. App.—Fort Worth Apr. 10, 2008, no pet.) (mem. op.).

### Subsection (Q)

Under Subsection (Q), a court may terminate parental rights based on clear and convincing evidence that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." TEX. FAM. CODE § 161.001(b)(1)(Q). Although the purpose of (Q) is to allow a prospective analysis of the child's needs to prevent neglect while the parent is incarcerated, it has been interpreted in a way that may punish the parent[1] without advancing the child's needs.

---

[1] "[T]he purpose of the State's intervention in the parent-child relationship is to protect the best interests of the children, not to punish parents for their conduct." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003); *In re J.M.G.*, No. 07-16-00202-CV, 2016 WL 6471337, at *3 (Tex. App.—Amarillo Oct. 27, 2016, no pet.) (mem. op.) (noting that the focus of termination under Subsection (Q)—the parent's future

The issue lies in the second step of the analysis. After the party moving for termination produces evidence of knowing criminal conduct by the parent resulting in two or more years of confinement, in the second step, the burden shifts to the parent. The parent must produce some evidence of how the parent will provide care for the child while he is confined. The Texas Supreme Court, however, has held that it is insufficient for a parent to make provisions for the child's care unless the parent can show that those provisions are "on [the parent's] behalf." *In re H.R.M.*, 209 S.W.3d at 110 (describing as "meritless" the father's argument that he met his burden under (Q) because he left the child under the mother's care when he was incarcerated).[2]

Thus, it is insufficient in this case for Cooper to have arranged for Sims to care for her granddaughter, Joanne. To satisfy (Q), Sims must have agreed to do so "on [Cooper's] behalf," not merely because of her own relationship with Joanne.

---

imprisonment and inability to care for the child, not the parent's past criminal conduct—"is equally applicable in [a] private-party termination" as one brought by the State) (citing *In re A.V.*, 113 S.W.3d at 360). Termination of parental rights is not intended as "an additional punishment automatically imposed along with imprisonment for almost any crime." *In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.).

[2] The Amarillo Court of Appeals has affirmed a trial court order terminating a father's parental rights in a termination proceeding brought by a maternal grandmother. *See In re J.M.G.*, 2016 WL 6471337, at *3; *but see In re I.G.*, No. 13-18-00114-CV, 2018 WL 3062581, at *4–5 (Tex. App.—Corpus Christi June 21, 2018, no pet.) (mem. op.) (reversing termination of the father's parental rights where grandparents testified they were part of his "support network" in caring for children every day before his incarceration and supported the father retaining parental rights).

This requirement does not reflect the imperfect and evolving relationships in a family. And it punishes the incarcerated parent for something that has no effect on the child's prospective welfare. Joanne is no better or worse off if Sims is caring for her because Sims is her grandmother or because Sims is doing so on Cooper's behalf. But the requirement leads to an arbitrary result when, as here, the relative has a difficult relationship with the parent but there is no concern about the child's future welfare. Put differently, Cooper cannot show that Sims is providing care on his behalf, even if the arrangement began that way, when Sims is suing to terminate his parental rights. The deterioration of Cooper's relationship with his mother, however, does not affect the care Joanne continues to receive. Because Joanne's welfare is unaffected by whether Cooper arranged for care on his own behalf, a predicate finding under (Q) is not a result that sounds in the best interest of the child. The result of a termination proceeding should not rise or fall based on whether the Department or a relative initiates it. And the relief here is affected by the result compelled by *In re H.R.M*. Instead of denying the petition to terminate Cooper's parental rights based on the lack of evidence under Subsections (C), (F), and (Q), because the case is resolved on the best-interest analysis, we are constrained to remand for further proceedings.

The *In re H.R.M.* Court was concerned that allowing an incarcerated parent to rely on a non-incarcerated conservator's care to meet his Subsection (Q) burden

5

might create a scenario in which "termination under subsection Q could not occur in any instance where one parent is not incarcerated and is willing and able to care for the child." *Id.* While Subsection (Q) may be unavailable under that scenario, that does not mean that termination is unavailable entirely. The abandonment subsections remain as a basis for termination if the parent—whether incarcerated or otherwise—is out of touch with the child for the statutorily set timeframe and not providing care. *See* TEX. FAM. CODE § 161.001(b)(1)(B), (C), & (F).

Here, though, Sims failed to meet the requirements to establish termination based on abandonment. In light of the court's duty to strictly construe termination statutes in favor of the parent, Subsection (Q) should not provide a backdoor to termination when one parent is incarcerated. This is especially true when the conservator cannot establish abandonment and must resort to a distinction between care on behalf of the incarcerated parent or in spite of the parent without any evidence of how that distinction affects the child, impacts the child's best interest, or signals any risk of future neglect.

## Conclusion

For these reasons, I urge the Texas Supreme Court to reconsider its conclusion in *In re H.R.M.* and hold that Subsection (Q) can be met with evidence that a named conservator has and plans to continue to provide care for the child without additionally requiring proof that the care is "on behalf of" the parent. To the extent

the evidence establishes that the incarcerated parent lacks involvement in the child's life and relies unduly on the conservator to provide for the child's physical and emotional needs, other predicates for termination are available.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Justice Landau, concurring.

Justice Keyes, dissenting.