

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00355-CV

———————————————————

IN THE INTEREST OF E.K. AND P.K., CHILDREN

---

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-679575-20

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

C.B. (Grandmother) filed a petition[1] to terminate the parental rights of M.K. (Mother) and J.K. (Father) to their children Emily and Peter,[2] along with a request to adopt them. Following a bench trial, the trial court terminated both parents' rights to their children and granted the adoption. Mother raises three issues on appeal. In the first two, she complains that there is legally and factually insufficient evidence to support the trial court's findings that she placed the children in conditions and engaged in conduct that endangered them. In her third issue, Mother complains that there is legally and factually insufficient evidence that she engaged in criminal conduct that resulted in her conviction and imprisonment and inability to care for her children for not less than two years from the date of filing of Grandmother's petition.[3]

We find the evidence sufficient to support the trial court's decision under both the imprisonment and endangering-conduct allegations. We therefore affirm the trial court's judgment.

---

[1]Grandmother's husband joined in the petition at the time it was filed, but he passed away during the pendency of this litigation.

[2]As this is a parental-rights termination case, we use aliases to refer to the children, parents, and grandparents involved. *See* Tex. R. App. P. 9.8(b)(2).

[3]Grandmother did not file a brief.

## II. Background

In 2016,[4] Mother was placed under arrest. She called Grandmother, asking her to take care of the two children. The children were soon in the care of CPS and eventually placed with Grandparents through the order of an Arkansas court.

Mother pled guilty to and was convicted in federal court of conspiracy to possess a controlled substance with intent to distribute. She was sentenced to 300 months (twenty-five years) in prison. Her plea papers and record of her federal sentencing hearing were introduced in evidence. Specifically, Mother agreed in federal court that the following facts were true:

> In 2014 and 2015, [Mother] received ounce quantities of methamphetamine from others, often on consignment. In turn, [Mother] distributed methamphetamine to various customers in the Fort Worth and Arlington, Texas, areas, returning to others for additional methamphetamine. In this manner, [Mother] conspired with others to possess with intent to distribute more than 50 grams of methamphetamine.

Mother testified at the April 2022 termination trial, saying that she intended to sign an affidavit of relinquishment within the next thirty days.[5] She also testified that Father's rights should be terminated, and she agreed that she and Father were not "in a position right now" to "take care of the children." Mother also agreed that the

---

[4]At that time, Emily was three-and-a-half and Peter was one-and-a-half years old.

[5]No such affidavit appears in the record, nor did the trial court terminate Mother's parental rights on that basis.

3

children were safe and secure with Grandmother and that it was in the children's best interest to remain with her.

As for Father, he had last seen the children on New Year's Day 2016, went to jail soon after, and was released in autumn of that year. Father was again incarcerated in July 2017, pled guilty in federal court that October to possession with intent to distribute methamphetamine, and was sentenced to 130 months in prison. He also testified that he had been a member of the Aryan Brotherhood for about twelve years and that he had used illegal drugs, including methamphetamine, since the children had been born. Father agreed that possessing and selling methamphetamine and being in a criminal gang could endanger his children.

The trial court terminated the parental rights of both Mother and Father to Emily and Peter. Specifically, the trial court found that both parents had knowingly placed or allowed the children to remain in conditions that endangered their well-being, that they had engaged in conduct that endangered the children's well-being, and that they had engaged in criminal conduct that resulted in their imprisonment and inability to care for the children for not less than two years from the date Grandmother's petition was filed. The trial court also found it was in the children's best interest for their parents' rights to be terminated. Father did not appeal the trial court's decision. Mother's appeal followed.

4

### III. Evidence of Imprisonment and Mother's Consequent Failure to Provide for Her Children

Taking Mother's third issue first, she claims that there was legally and factually insufficient evidence to support the trial court's finding that she knowingly engaged in conduct that resulted in a criminal conviction (with imprisonment) and inability to care for the children for not less than two years from the date of the filing of Grandmother's petition. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q). We disagree.

### A. Legal and Factual Sufficiency Standards of Review

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1) and (2) that termination is in the child's best interest. *Id.* § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We give deference to the factfinder's conclusions, indulge every reasonable inference

from the evidence in favor of that finding, and presume the factfinder resolved any disputed facts in favor of its findings, so long as a reasonable factfinder could do so. *Id.* We disregard any evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts. *Id.*

In evaluating the evidence's factual sufficiency to support termination, we must perform "an exacting review of the entire record." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the factfinder's findings and do not supplant them with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). If the factfinder reasonably could form a firm conviction or belief that termination is justified under the relevant subsections, then the evidence is factually sufficient. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). But if a factfinder reasonably could not— because the disputed evidence that could not reasonably support the finding is too significant—then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Inability to Care for Children During Imprisonment

Family Code Section 161.001(b)(1)(Q) authorizes termination of the parent–child relationship if the trial court finds, by clear and convincing evidence, that the parent knowingly engaged in criminal conduct that resulted in the parent's (1) conviction of an offense and (2) "confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." Tex. Fam. Code Ann. § 161.001(b)(1)(Q); *In re A.V.*, 113 S.W.3d 355, 356 (Tex. 2003). Subsection (Q) applies prospectively and acts in anticipation of—and not just in

6

response to—a parent's abandonment of a child due to her incarceration: "[S]ubsection [(Q)] purports to protect children whose parents will be incarcerated for periods exceeding two years after termination proceedings begin." *Id.* at 360–61.

It is undisputed that Mother was sentenced to a term of twenty-five years in federal prison. Moreover, as there is currently no opportunity for parole in the federal system,[6] there is no chance that she will be released in under two years. The issue in this case, therefore, is whether Mother has produced evidence of how she will provide care for the children during her period of confinement—or whether she has arranged with another person for that person to care for the children while she is in prison.[7] *See In re G.S.*, No. 02-19-00390-CV, 2020 WL 1294925, at *4 (Tex. App.—Fort Worth March 19, 2020, pet. denied) (mem. op.) (holding Subsection (Q) requires finding that parent is both incarcerated and unable to care for the child for at least two years from date of petition's filing).

Mother argues that she has "defeated" Subsection (Q) by demonstrating that she has arranged for Grandmother to care for her children (an arrangement that has been formalized in an Arkansas court order). But Mother's argument misses the point of Subsection (Q). Simply arranging for the children's care is not enough—the person agreeing to care for the children must agree to do so *on behalf* of the

---

[6]During Mother's federal plea hearing, the District Judge informed her that she would not be released on parole.

[7]Mother admitted during her testimony that she is unable to provide support for the children.

incarcerated parent. *See H.R.M.*, 209 S.W.3d at 110. A caregiver who after agreeing to provide care for the children seeks to terminate the parent's rights cannot be said to be acting on that parent's behalf. *See id.* ("Showing that [mother] cared for H.R.M. and maintained contact with [incarcerated father], however, does not show that she agreed to care for H.R.M. *on his behalf*, particularly where, as here, she is seeking to terminate his rights."); *see also G.S.*, 2020 WL 1294925, at *5 (holding that incarcerated father was unable to provide care for child, despite child being in mother's custody); *In re J.G.S.*, 574 S.W.3d 101, 121 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (stating that where petitioner in termination proceeding is the child's caregiver, her "actions are not in support" of incarcerated parent, and therefore any agreement between the parties to provide care was not on behalf of the parent).

Here, Grandmother is the petitioner seeking to terminate Mother's parental rights. Accordingly, even though she agreed to care for the children, Grandmother's actions were not on Mother's behalf and cannot undercut the trial court's finding that Mother is unable to provide care for her children.[8] Viewed in the light most favorable

---

[8]Mother's situation is distinguishable from one of our cases relied on by Mother, *In re E.S.S.*, 131 S.W.3d 632, 640 (Tex. App.—Fort Worth 2004, no pet.) (holding that incarcerated father met burden to show he made arrangements with his own mother and brother to care for his children). In that case, the child's mother—not the child's possessory conservators—filed a petition seeking termination. *See id.* Contrary to the facts in Mother's case, it was evident that the father's mother and brother in *E.S.S.* took care of the children on the father's behalf. *See H.R.M.*, 290 S.W.3d at 110–11 (citing *E.S.S.* for the proposition that support will ordinarily come from the incarcerated parent's family or someone who has agreed to assume that parent's obligation to care for the child).

to the trial court's finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that Mother was convicted of a criminal offense resulting in imprisonment and was unable to care for her children for not less than two years from the date Grandmother filed her petition. Therefore, the evidence is legally sufficient to support the trial court's finding under Subsection (Q). Likewise, based on the evidence and giving due deference to the factfinder's findings, the evidence is factually sufficient to support the trial court's finding under Subsection (Q). We overrule Mother's third issue.

### III. Evidence of Endangerment

In her first and second issues, Mother claims that there was both legally and factually insufficient evidence to support the trial court's findings of endangerment under Sections 161.001(b)(1)(D) and (E) of the Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). We find, however, that there was sufficient evidence that Mother's conduct endangered the children's emotional and physical well-being. We address Mother's second issue regarding Subsection (E) next.

### A. Endangerment Under Subsection (E)

The trial court granted the termination in part on the grounds listed in Subsections (D) and (E) of Section 161.001(b)(1). If a trial court's termination is based on Subsection (D) or (E), an appellate court must review one of those grounds (or both if neither withstands appellate review) when raised on appeal—even if other grounds would support termination—because a termination on either of those

9

grounds has collateral consequences for the parent's relationship with other children the parent may have in the future. *See id.* § 161.001(b)(1)(M) (providing that a prior termination under Subsection (D) or (E) is a ground for terminating parental rights to a different child); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) ("[I]f a court of appeals affirms the termination on either [Subsection (D) or (E)] grounds, it must provide the details of its analysis."). Accordingly, we begin with Subsection (E).

Subsection (E) permits termination when the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). The relevant inquiry under Subsection (E) is "whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act." *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.). Termination under Subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). However, the parent's conduct need not be directed at the children or actually cause them injury; "[t]he specific danger to the child's well-being may be inferred from parental misconduct standing alone." *M.B.*, 2015 WL 4380868, at *12. Courts may consider a parent's conduct that occurred outside the child's presence or after the child's removal by the Department. *In re M.S.*, No. 02-20-00147-CV, 2020

10

WL 6066400, at *4, *8 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *M.B.*, 2015 WL 4380868, at *12.

Additionally, termination under Subsection (E) must be based on more than a single act—there must be a voluntary, deliberate, and conscious course of conduct by the parent. *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). Further, imprisonment alone is insufficient to show a continuing endangering course of conduct, but if all the evidence—including imprisonment— proves a course of conduct that endangers the child, then a finding under Subsection (E) is appropriate. *Id.* at 743; *see In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.) (holding it is not necessary to show that imprisonment was a result of a course of conduct endangering the child; it is only necessary to show that incarceration was part of a course of conduct endangering the child).

## B. There Was Sufficient Evidence of Endangering Conduct

Here, Mother was convicted of possessing methamphetamine with intent to distribute and received a sentence of twenty-five years in federal prison. Although she received only one conviction for her conduct, Mother admitted to having participated in a conspiracy to sell drugs over the course of two years. According to the evidence, Mother stipulated to the fact that she received "ounce quantities" of methamphetamine from others during 2014 and 2015 and in turn distributed this to

11

various customers in Fort Worth and Arlington. Her continued participation in the sale of methamphetamine for over two years therefore represents a course of endangering conduct which implicates Subsection (E).

Drug-dealing, of course, has the potential to constitute conduct that endangers a child. At the very least, Mother could have "exposed the children to the dangers inherent in the drug trade, including the risks of violence and imprisonment." *Mincy v. Tex. Dep't of Protective and Regul. Servs.*, No. 03-99-00432-CV, 2000 WL 632762, at *6 (Tex. App.—Austin May 18, 2000, pet. denied) (not designated for publication). Mother's admitted drug-dealing—which exposed her to the risk of long-term imprisonment that would leave her children without their primary caregiver and thus subject the children to instability and insecurity[9]—and Mother's resulting long incarceration together demonstrate an endangering course of conduct that supports the trial court's Subsection (E) finding.[10]

---

[9] *See In re J.B.*, No. 02-22-00384-CV, 2023 WL 1859766, at *9–11 (Tex. App.—Fort Worth Feb. 9, 2023, no pet. h.) (mem. op.) (holding that father engaged in endangering conduct where, among other things, his constant incarceration affected his ability to care for his child and was a factor in the instability in his child's life); *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.) (holding that father's incarceration affected his ability to insure that his son was properly taken care of and therefore showed an endangering course of conduct).

[10] Although not directly addressed by the testimony at trial, it would have been rational for the factfinder to have concluded that Mother used methamphetamine in addition to conspiring to sell it. This conclusion is based on Mother's defense attorney's argument at her federal sentencing hearing that Mother was merely a "mule" and that her drug-dealing activity "was just to support her habit in the day-to-day." As we have previously recognized, parental drug use and addiction can

12

A reasonable factfinder could have formed a firm belief or conviction that Mother engaged in a course of conduct that endangered the physical or emotional well-being of her children. Further, giving due deference to the findings, the evidence is factually sufficient to show that Mother engaged in an endangering course of conduct. We overrule Mother's second issue.

Because we have affirmed the sufficiency of the evidence to support the Subsection (E) ground, we need not address the Subsection (D) ground. *See In re E.C.*, 02-20-00022-CV, 2020 WL 2071755, at *5 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.). We therefore do not address Mother's first issue.

## V. Conclusion

Having overruled Mother's issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: March 2, 2023

---

negatively affect children, even if that conduct is not directed at them. *See In re M.M.*, No. 02-21-00185-CV, 2021 WL 5227177, at *6 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.) ("Methamphetamine addiction can work havoc not only on the addict but on the addict's family, and small children . . . are particularly vulnerable."). Thus, to the dangers of drug-dealing and Mother's lengthy incarceration may be added the extra issue of her methamphetamine addiction.