# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00383-CV

---

### C. G., Appellant

### v.

### Texas Department of Family and Protective Services and R. H., Appellees

---

### FROM THE 428TH DISTRICT COURT OF HAYS COUNTY
### NO. 20-0720, THE HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Appellant C.G. ("Mother") appeals from the lower courts' orders terminating her parental rights to her son "Adam," who was born in July 2014 and was who was eight at the time the amended order of termination was signed.[1] She raises multiple issues, including that the courts lacked jurisdiction to enter their orders of termination. Because we agree that the orders were signed after the courts lost jurisdiction over the proceeding, we vacate the orders of termination and dismiss the underlying proceeding.

## PROCEDURAL BACKGROUND

In March 2020, the Texas Department of Family and Protective Services filed a petition seeking conservatorship of Adam. After Mother underwent a hair-follicle test that was

---

[1] For the child's privacy, we will refer to him by an alias and to his family members by their relationships to him. *See* Tex. R. App. P. 9.8. Adam's father's ("Father") rights were also terminated, but he did not file a notice of appeal.

positive for methamphetamine and amphetamine and then failed to submit to a second ordered test, the associate judge signed an order on June 24, 2020, appointing the Department as Adam's temporary managing conservator and stating that the case's dismissal date was June 28, 2021. Adam was placed with R.H., his maternal aunt ("Aunt"), in the summer of 2020. On December 10, 2020, Mother filed her Original Answer and Jury Demand.

On June 23, 2021, the parties appeared before the associate judge to offer a Rule 11 agreement, pursuant to which Aunt would be appointed permanent managing conservator, the parents would retain their rights, and Mother would have supervised visitation, increasing if she tested negative on a hair-follicle test. The judge and the parties discussed Mother's recent hair-follicle test, which was positive for methamphetamine. The Court Appointed Special Advocates (CASA) volunteer said she believed that Adam should have supervised visits with Mother, and Mother disputed the drug test and insisted she had not used illegal drugs in years. The judge said, "[W]e've got a six-year-old child here who deserves permanency. And if we've got a mom that's not willing to get her act together so she can be a parent to this child, doesn't this child deserve to be adopted? I think so." The judge also noted that the case was "in the interest of [Adam]. So, I don't care what's in the best interest of the parents." Asked if she would approve the Rule 11 agreement, the judge responded that the parties should "get some guidance from CASA on that," that Mother should take another hair-follicle test, and that the parties should return to mediation. On June 28, 2021, the trial court signed an order extending the dismissal date to December 25, 2021, pursuant to section 263.401(b) of the Texas Family Code, "as supplemented by" the *Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021) (effective May 26, 2021), finding "that extraordinary circumstances necessitate" the extension.

On August 19, 2021, the parties appeared before the associate judge for a bench trial.[2] Several minutes into the trial, while the parties were questioning the first witness, Mother's attorney noted Mother's jury demand. The associate judge asked the parties to brief the issue, and the Department argued that Mother had waived her jury demand because (1) when the case was set for a bench trial, Mother did not object or complain about the removal of the case from the jury docket, and (2) when the bench trial began, Mother did not reurge her jury demand until after the Department had begun questioning a witness and admitting exhibits into evidence. Mother's attorney explained that she had briefly forgotten about the jury demand due to difficult personal circumstances.

On September 1, the associate judge issued a letter stating that although she agreed with the Department's conclusion, "in the interest of justice and taking the circumstances surrounding this last hearing/bench trial into consideration, I am going to grant [Mother's] request for a jury trial." The associate judge stated that she "believe[d] the ethical thing to do is to go back to the position just prior to the 'Mediated Settlement Agreement,' should this case go forward to trial." The judge also stated that the parties could take their settlement agreement to the district court but that she "cannot find that agreement to be in the best interest of the child and will not sign such an order." The associate judge instructed Mother's attorney to obtain a jury setting in front of the district court and stated, "I will consider the prior hearing/beginning of a bench trial to be a Permanency Review Before Final Order." On September 7, 2021, the associate judge signed a Permanency Hearing Order Before Final Order, which again recited that the dismissal date was December 25, 2021, and stated, "IT IS ORDERED that the trial court

---

[2] The parties did not request or arrange to have the reporter's record from the August 19, 2021 hearing filed in this appeal. The parties agree that Mother's attorney raised the jury-trial issue several minutes into the hearing, at which point the trial court halted the hearing.

grants [Mother's] request for a jury trial despite the commencement of the bench trial on August 19, 2021. The Court finds that granting the jury demand is 'in the interest of justice.'"

Meanwhile, on September 1, the Department filed a request for de novo review of the associate judge's jury-demand decision, and on September 27, it filed before the associate judge a motion for further temporary orders, asking the judge to "render further temporary orders as to the clarification of the commencement of the trial on the merits issue." The Department stated that if the judge intended to declare a mistrial, she "is further obligated to render an extension and schedule a new date on which the case shall be dismissed within 180 days [after] the mistrial is granted." *See* Tex. Fam. Code § 263.401(b-1). The Department attached emails between the parties and the associate judge related to "whether the order should say that the trial had 'commenced,' since the court granted [Mother's] jury demand and kept the December 25 dismissal date." In an email dated September 2, 2021, the judge replied, "My intent was to grant a new trial, taking everyone back to the position they were prior to the last setting." The Department responded that if the judge "is granting a mistrial of some sort, that triggers additional [statutes] that also affect the court's dismissal date."

On December 16, 2021, John Hardy, Adam's attorney ad litem, filed a report stating that the case was set for "entry of a final order" on December 16 and that the parties "had signed an agreed order, which was intended to be entered at this setting." However, he stated, concerns had just arisen about Adam's foster home, and Hardy thus could no longer support the agreed order and was "somewhat at a loss on how to proceed, since [Adam] has expressed throughout the case that he wants to be returned to [Mother]." Hardy said, "The agreed final order appears to be the most realistic option for [Mother] to keep her parental rights, but these new allegations give the ad litem pause." He recommended "an order clarifying the procedural

4

status of this case," stating that the dismissal date was December 25, 2021, and that the bench trial had "commenced" on August 19 but ended when Mother's attorney raised the issue of the jury demand. Hardy concluded, "I believe the most appropriate action would be to declare the aborted bench trial on August 19 to be a mistrial, which would give the parties a new dismissal date, and more time to address these new allegations."

No further action was taken in the case until March 8, 2022, when the Department filed a motion for mistrial stating that the hearing before the associate judge had been stopped due to the "overlooked" jury demand and that the Department had filed a motion for de novo review, which had not yet been heard. The Department asked that the dismissal date be extended "to six months from the date the order is granted." The clerk's record does not reflect that any order was entered in response to either the Department's motion for mistrial or its motion for de novo review of the associate judge's ruling that Mother was entitled to a jury trial.

On April 28, 2022, the associate judge commenced a final hearing, starting with a discussion of the procedural history of the case. Tim Judkins, CASA Supervisor, explained that in June 2021, the associate judge had rejected the parties' Rule 11 agreement and sent the parties back to mediation. The second mediation failed, and when the parties came back to the associate judge in August for trial, "we had the now adjudicated mistrial." Judkins also stated that the parties "couldn't get back in front of anybody until" March 9, 2022.[3] The associate judge asked about the December 16, 2021 hearing before the district court, and Judkins noted that that hearing was intended both to address the Department's request for de novo review of the jury-demand ruling and to allow the district court to consider the parties' Rule 11 agreement.

_____

[3] The record does not reflect that any actions were taken by either the associate judge or the district court on or near March 9, 2022.

The Department explained that after Hardy raised his concerns, the parties informed the district court that they could not reach an agreement and that they "were going to pass on that setting to try to confer and figure out what we could kind of do." The Department said, "Nothing has come from that so far. And so, we are ready to proceed with a termination trial." Judkins also stated that Mother's attorney had set a jury trial "for the first week in January" but that the setting "was pulled" after the parties passed the December district-court setting.

The associate judge restated her conclusion that Mother was entitled to a jury trial unless she had waived her request, and Mother's attorney stated that although she had repeatedly asked, Mother had not "told [her] that she wanted a jury trial again." After some discussions in which Mother insisted that her continuing positive hair-follicle tests were due to medications she had been prescribed, the associate judge stated, "I am taking judicial notice of the proceedings that we've had thus far leading up to this. . . . And I'm going to proceed with trial." The judge conducted a one-day bench trial and signed an order of termination several weeks later, on May 17. Mother filed a request for a de novo review, and on June 28, the district court agreed with the associate judge, signing an order of termination finding that termination was in Adam's best interest and that Mother had engaged in conduct that endangered Adam or knowingly placed him with individuals who engaged in such conduct and had not complied with a court order that established the actions necessary for her to regain custody. *See id.* § 161.001(b)(1)(E), (O), (2). On November 30, 2022, the associate judge signed an amended final order, terminating Mother's rights on the same grounds, appointing Aunt as permanent managing conservator, and releasing the Department from any duties or responsibilities in the case.

## DISCUSSION

On appeal, Mother raises four issues, arguing that it was error to reject the Rule 11 agreement and to conduct a bench trial, that the court lacked jurisdiction to enter the final order, and that insufficient evidence supports the best-interest finding. Because Mother's third issue is dispositive, we will limit our consideration to that issue.

As an initial matter, we address the Department's argument that Mother's appeal is moot. Mother filed her notice of appeal complaining of the original termination order, and on the day she filed her brief, the Department filed an agreed motion to abate, stating that the parties "believe they can reach an agreement in this matter, considering some additional information that has come to light since the rendition of the trial court's order." We abated the appeal (and later extended the abatement on the Department's motion), and after the November 2022 hearing, the Department filed a status report explaining that the hearing had not "changed the prior termination" of Mother's rights, that Mother still wished to appeal the termination of her rights, and that Aunt had intervened and had been given conservatorship of the child. The Department asked us to "take up this matter again and continue as if the abatement and remand had not happened" and to set a due date for its brief. We reinstated the appeal and set a deadline for the Department's brief, which later filed a letter stating that although the Department believes that sufficient evidence supported the order of termination, it has been dismissed from the case and thus "no longer has a justiciable interest in this matter and will not be filing a brief in opposition." It also argues that because Mother did not file an amended brief complaining of the amended order, her "brief is moot and cannot support an appeal." We disagree.

If a party appeals an order (or judgment) that is later modified or vacated and replaced with another appealable order, we "must treat the appeal as from the subsequent order

7

. . . and may treat actions relating to the appeal of the first order . . . as relating to the appeal of the subsequent order." Tex. R. App. P. 27.3. Mother's briefed issues apply with equal force to the amended order of termination. We thus disagree with the Department's argument that Mother's brief is moot, as well as any implied arguments that we lack jurisdiction over the appeal. *See id.*; *see also In re A.K.M.*, No. 02-12-00469-CV, 2013 WL 6564267, at *1 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (mem. op.) (court of appeals declined to dismiss appeal that was filed after signing of temporary orders, before final order was signed, because subject matter of temporary and final orders was virtually identical, noting that supreme court "has cautioned on several occasions that appellate courts should not dismiss an appeal for a procedural defect when any arguable interpretation of the rules of appellate procedure would preserve the appeal").[4]

Parental rights are "essential" rights, "a basic civil right of man," and "far more precious than property rights," *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985), and are "perhaps the oldest of the fundamental liberty interests" protected by the Constitution, *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Because "[p]roceedings to terminate the parent-child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection," *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018), they "should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent," *Holick*, 685 S.W.2d at 20.

---

[4] In its letter, the Department states, "[T]he Department would respectfully request not to file an appellee's brief unless this Honorable Court determines the amended final order did not supersede the trial court's prior final order." Having twice requested a brief from the Department and given the background of this case and the length of time it has been docketed, to the extent the letter can be interpreted as asking for additional time to file a brief in the event we disagree with the Department's argument, we decline to grant additional time for briefing.

The family code provides strict deadlines for a suit brought by the Department seeking the termination of parental rights. *See* Tex. Fam. Code § 263.401. The initial deadline by which a trial court must either commence trial or grant an extension under subsections (b) or (b-1) is one year from the date the court rendered its initial order appointing the Department as temporary managing conservator. *Id.* § 263.401(a). Subsection (b) allows a trial court to retain the suit for up to 180 days if it finds both that extraordinary circumstances require the child to remain in the Department's temporary managing conservatorship and that continuing the Department's appointment as temporary managing conservator is in the child's best interest. *Id.* § 263.401(b). If the court makes such findings, it must render an order scheduling a new dismissal date no later than 180 days after the initial dismissal date, making "further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit," and setting the case for a trial on the merits no later than the new dismissal date. *Id.* Under subsection (b-1), if the court commences trial before the dismissal date—whether the initial one-year dismissal or a date extended under subsection (b)—and then either grants a motion for new trial or mistrial, the court "shall retain the suit" on its docket and render an order scheduling a new automatic dismissal date no later than 180 days after the date the motion for a new trial or mistrial is granted.[5] *Id.* § 263.401(b-1). As under subsection (b), the order must also make "further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit" and must set the case for a new trial on the merits by the extended dismissal date. *Id.* If trial does not commence by the dismissal date, the court loses jurisdiction over the matter, "and the suit is automatically dismissed without a court order." *Id.*

---

[5] Subsection (b-1) also applies when a case is remanded from an appellate court after an appeal of a final termination order. *See* Tex. Fam. Code § 263.401(b-1).

§ 263.401(a), (c). Subsection (c), which applies when an extension is granted under subsections (b) or (b-1), further provides that a trial court "may not grant an additional extension that extends the suit beyond the required date for dismissal under Subsection (b) or (b-1), as applicable."[6] *Id.* § 263.401(c). "The parties to a suit under this chapter may not extend the deadlines set by the court under this subchapter by agreement or otherwise." *Id.* § 263.402. If a case continues past the dismissal date without commencement of trial, any orders rendered after that date are void. *In re G.X.H.*, 627 S.W.3d 288, 296 (Tex. 2021).

Mother argues that because the trial court did not extend the December 25, 2021 dismissal date, all orders rendered after that date are void, including the district court's original and amended orders of termination. We agree.

The associate judge signed an order extending the original dismissal date under subsection (b) from June 28, 2021, to December 25, 2021. Having granted that extension, even if the record contained any indication that the judge had intended or attempted to grant a second extension under that subsection, she would have lacked the authority to do so. *See In re G.P.*, No. 03-22-00796-CV, 2023 WL 1878567, at *4-5 (Tex. App.—Austin Feb. 10, 2023, orig. proceeding) (mem. op.) (explaining that "to the extent that section 263.401 can be read as authorizing more than one extension, it authorizes at most one extension under subsection (b) and one extension under subsection (b-1)" and "does not authorize multiple extensions under either subsection"); *see also In re Department of Fam. & Protective Servs.*, 273 S.W.3d 637, 645, 648-49 (Tex. 2009) (declining to construe prior version of statute in manner that would "allow the trial court to retain the case on its docket indefinitely despite motions to dismiss" and

---

[6] Subsection (a) governs a trial court's loss of jurisdiction when a case goes beyond an initial dismissal date that is not extended. *See id.* § 263.401(a).

"would effectively" nullify "the time limitations specified by the legislature"), *superseded by statute on other grounds as explained in G.X.H.*, 627 S.W.3d at 295 & n.4.

As for subsection (b-1), the record does not reflect that the associate judge signed an order indicating that she had granted a mistrial or motion for new trial when she halted the bench trial on August 19, 2021. Instead, she stated in her letter ruling that she would grant Mother's jury demand and treat the August 19 proceeding as a permanency hearing. The judge then signed the September 7, 2021 Permanency Hearing Order Before Final Order, which reiterated the December 25, 2021 dismissal date. Even if we interpret the associate judge's decision to halt the August 19 bench trial as granting a motion for new trial, as stated in the judge's September 2, 2021 email to the parties, or a mistrial, as urged by the Department and Hardy, that decision was made at the latest on September 7, 2021, the date the judge signed the Permanency Hearing Order stating that Mother was entitled to a jury trial. Thus, the latest subsection (b-1) dismissal date would have been March 7, 2022, the first Monday after 180 days from the granting of the new trial or mistrial. *See* Tex. Fam. Code § 263.401(b-1). But the trial court did not commence the final hearing until almost two months later, on April 28, 2022. *See* *G.X.H.*, 627 S.W.3d at 296 (holding orders entered after the automatic dismissal date are void).

Nor can we view the April 2022 bench trial as a continuation of the August 19, 2021 bench trial. In August 2021, when Mother raised the jury-demand issue, the associate judge stopped the hearing and requested briefing on the issue. The judge later issued a letter stating that she was granting Mother's request for a jury trial in the interest of justice, that Mother should obtain a jury setting in the district court, and that the judge would "consider the prior hearing/beginning of a bench trial to be a Permanency Review Before Final Order." On September 2, 2021, in an email to the parties, the judge stated, "My intent was to grant a new

11

trial." A week later, the associate judge signed a Permanency Hearing Order Before Final Order, which recited the December 25, 2021 dismissal date and stated that she was granting Mother's request for a jury trial "despite the commencement of the bench trial on August 19, 2021." All the associate judge's actions, including the Permanency Hearing Order, indicate that she halted the August 2021 hearing altogether to allow for a new jury trial at a later date; there is no indication that the judge intended to recess the bench trial and continue it later.

Moreover, Hardy, in his December 2021 report, stated that the August 19, 2021 bench trial "ended" when Mother's attorney raised the issue of the jury demand and opined that "the most appropriate action would be to declare the aborted bench trial on August 19 to be a mistrial, which would give the parties a new dismissal date." And in its motion for mistrial filed in March 2022, the Department stated that "[t]he trial was stopped prior to hearing all evidence and prior to a verdict or judgment being given in the case." The associate judge and the parties all seemed to understand that the August 19, 2021 bench trial was ended rather than merely being recessed for eight months and resumed on April 28, 2022.

Based on the record before us, the court's jurisdiction over the case automatically terminated at the very latest on March 7, 2022. Any orders rendered after that date, including the orders of termination signed on June 28 and November 30, are void.[7] *See G.X.H.*, 627 S.W.3d at 296.

---

[7] As Mother notes, even if we were to view the associate judge's reference to the *Thirty-Eighth Emergency Ord. Regarding the COVID-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021) (effective May 26, 2021), as somehow impliedly extending the dismissal date to the maximum allowed under the order, rather than December 25, 2021, the date specified in the June 28, 2021 order, the *Thirty-Eighth Emergency Order* and the *Fortieth Emergency Order*, which renewed and amended the *Thirty-Eighth Order*, *see Fortieth Emergency Ord. Regarding COVID-19 State of Disaster*, 629 S.W.3d 911 (Tex. 2021) (effective July 19, 2021, renewing and amending *Thirty-Eighth Ord.*), both provided that the dismissal date in this case could be

**CONCLUSION**

Because the orders of termination were signed after the lower courts automatically lost jurisdiction over the proceeding, those orders are void and without effect. *See id.* We lack jurisdiction to consider the merits and may only declare the orders void, vacate the orders, and dismiss the underlying case. *See In re X.A.F.*, No. 07-19-00443-CV, 2020 WL 2896533, at *2 (Tex. App.—Amarillo June 1, 2020, no pet.) (mem. op.); *see also In re J.R.T.*, No. 09-21-00361-CV, 2022 WL 802557, at *4 (Tex. App.—Beaumont Mar. 17, 2022, no pet.) (mem. op.); *In re E.S.*, No. 12-21-00057-CV, 2021 WL 3265543, at *4 (Tex. App.—Tyler July 30, 2021, no pet.) (mem. op.); *In re J.R.*, 622 S.W.3d 602, 606 (Tex. App.—Fort Worth 2021, orig. proceeding).

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Vacated and Dismissed

Filed:   April 21, 2023

---

extended "no later than April 1, 2022." *See* 629 S.W.3d at 900-01, 629 S.W.3d at 912. Thus, even under that strained attempt to extend the deadline beyond December 25, 2021, trial commenced and the termination orders were rendered too late.